Pedro Bernal Bilse, Esq.
California Bar No.: 284444
BERNAL LAW, APLC
750 B Street, Suite 1710
San Diego, CA 92101
Phone: 619-736-9092
Fax:     619-793-1020
Email: pb@bernal-law.com

Attorney for Defendant
ALVARO ISRAEL ONTIVEROS VALDEZ

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>ALVARO ISRAEL ONTIVEROS VALDEZ,<br><br>　　　　　　Defendant. | Case No.: 21-CR-2293-JLS<br><br>**DEFENDANT'S SENTENCING MEMORANDUM**<br><br>Date:　February 24, 2023<br>Time:　9:00 a.m.<br>Judge:　The Hon. Janis L. Sarmiento |

TO: RANDY GROSSMAN, UNITED STATES ATTORNEY;
ALLISON LAIR MURRAY, ASSISTANT UNITED STATES ATTORNEY AND
NATALIE NELSON, UNITED STATES PROBATION OFFICER

## I.

### INTRODUCTION

Defendant ALVARO ISRAEL ONTIVEROS VALDEZ ("Mr. Ontiveros), by and through his counsel, Pedro Bernal Bilse, hereby respectfully submits the present Sentencing Memorandum in the above-captioned case.  The present Sentencing Memorandum is based upon the files and records in this matter, the attached memorandum of points and authorities, the exhibits attached to the present memorandum and any arguments presented to the Court at the time of sentencing.  Mr. Ontiveros respectfully requests this Court sentence him to a term of 48 Months in the Custody of the Bureau of Prisons followed by a period of supervised release.

## II.

## STATEMENT OF FACTS

**A.  The Individual Before the Court**

Mr. Ontiveros is 31-year-old husband and father of two children ages 12 and 6 years old, respectively.  Mr. Ontiveros has been in custody since July 26, 2021, and has not seen his family since being detained.  Prior to his arrest in this case, he had never set foot in the United States.  In fact, prior to his involvement in this case, he had never left his home state of State of Sinaloa or even been on a plane.  His time in detention and his inability to provide for his family has caused his wife and children significant hardship.

Mr. Ontiveros' early was life was simple.  He was born in a small, inland coastal town by the name of El Castillo, which is located in the municipality of Navolato, Sinaloa.  He spent most of his life in this town.  His parents both worked to make a living and provided a humble but decent life for the family.  He received a limited education and began working at an early age.  The waters off of the coast of the State of Sinaloa boast some of the world's best fishing and seafood.  It is therefore not surprising that many of the people who live in the coastal regions of Sinaloa make a living (in one way or another) from the fruit of the sea.

Mr. Ontiveros belongs to a fishing cooperative in Altata, Sinaloa (an even smaller fishing town), and is a fisherman by trade.  During the slow season, he works in a seafood cannery and packing factory.  He also gives local tourists tours of the bay on his boat to make extra money.  Mr. Ontiveros' father was a fisherman.  His mother worked in a seafood packing business.  And Mr. Ontiveros' only living brother also works as a fisherman.  This kind of work is all he knows.

Mr. Ontiveros' wife and children miss him very much.  His wife does not have access to a computer and is unfamiliar with email.  The undersigned discussed the facts of this case with her and the fact that he has been away from his family for a significant period of time.  His wife simply asks this Court to consider the effect that his absence is having on their children in fashioning affair and just sentence.

/ / /

/ / /

DEFENDANT'S SENTENCING MEMORANDUM

**B.     The Instant Offense**

In 2021, Mr. Ontiveros was giving a tour of the Altata bay on his boat to group of tourists. He soon became friendly with one of the men on the boat tour and told him that his main job was working as a fisherman. The pair exchanged information and Mr. Ontiveros soon began selling this person a portion of his daily catch (on the side). After several months, this person offered Mr. Ontiveros some work. Mr. Ontiveros was to fly to Colombia and ensure that a shipment of cocaine truly existed. His job was to take a photo of the drugs and send it back via telephone. For this he would be paid $3,000 dollars. This amount was significant to Mr. Ontiveros, in comparison to his customary daily earnings. He would be using this money to fix the roof on his family's home. Mr. Ontiveros agreed to the work. This person purchased a round-trip ticket for Mr. Ontiveros for a multi-day trip to Colombia.

Mr. Ontiveros flew from Culiacan, Sinaloa to Mexico City, and then from Mexico City to Bogota, Colombia. Once he got to Colombia, Mr. Ontiveros was taken to the jungle region in the northern part of the country to inspect the product. Once he inspected the product, he took a picture of the bales and sent it back as agreed. He was then told he needed to return via boat with the merchandise. This is not what Mr. Ontiveros agreed to do. However, given the circumstances he found himself in, he felt he did not have choice. Mr. Ontiveros complained that this was not the original plan. In response, his organizer said he would pay him more than they had initially agreed upon. Mr. Ontiveros spent several weeks being taken from safe house to safe house until the day came to set sail.

One day early in the morning, Mr. Ontiveros and three other men (his co-defendants) set sail for Mexico in a semi-submersible vessel loaded with drugs. Mr. Ontiveros did not know any of the other men that were apprehended on the boat. Mr. Ontiveros' responsibilities on the boat were limited. He was not the driver of the boat–he has no experience navigating vessels on the open seas. And he was not the mechanic either. His job was initially to ensure that a cocaine load truly existed. This turned out to only be partially true. What was initially supposed to be a one-week trip turned out to be much longer. Mr. Ontiveros' on the high seas experience was horrific. Far from

being a victim, he simply got into something that was way over his head. He was happy that the United States Coast Guard rescued him from what could have been a deadly endeavor.

Mr. Ontiveros is, of course, culpable of having agreed to assist in the trafficking of drugs, and he accepts his guilt. He is remorseful for having made the decision to deviate from honest line of work he has always followed. He has his family have suffered greatly because of his decisions.

**C.    The Motivation for The Offense**

Mr. Ontiveros committed this offense out of financial pressure. The COVID-19 pandemic affected nearly every aspect of the economy, including the maritime fishing trade. Ms. Ontiveros regrets the decision he made and is disappointed in himself because he knows he has missed out on very important moments in his children's lives. However, he remains hopeful that this Court will hand down a fair and just sentence and that he will have the opportunity to be with his children soon.

Mr. Ontiveros pleaded guilty at the earliest opportunity and has not sought to prolong this judicial process. He accepts responsibility for his actions and pledges to never be involved in a similar situation again.

## III.

## UNITED STATES SENTENCING GUIDELINES

## RANGE AND THE 3553(a) FACTORS

Pursuant to 18 U.S.C. § 3553(a)(4)(A), the guideline sentencing range must be considered when adjudicating Ms. Ontiveros' sentence. *See Kimbrough v. United States*, 552 U.S. 85, 108 (2007) (the Guidelines are the "starting point and the initial benchmark"). However, the Court "may not presume that the Guidelines range is reasonable." *Gall v. United States*, 552 U.S. 38, 50 (2007). Ultimately, the Court must impose a sentence that is sufficient, but not greater than necessary, to satisfy the § 3553(a) factors.

**A.  The Plea Agreement**

In the present case, the parties have agreed in the Plea Agreement that the Base Offense Level is 38, based on USSG §§ 2D1.1(c)(1). *See* Plea Agreement. The parties further agree that the

offense level should be adjusted upward 2 levels pursuant to USSG §§ 2D1.1(b)(3), as the offense involved use of a semi-submersible vessel. The parties have agreed that the offense level should be adjusted downward 2 levels for Safety Valve under USSG §§ 2D1.1(b)(18) and 5C1.2. The parties further agree that the offense level should be adjusted downward 3 levels for Acceptance of Responsibility under USSG § 3E1.1.

This leaves Mr. Ontiveros at an Adjusted Offense level of 35, a criminal history category of I, and a resulting guideline range of 168-210. Since Mr. Ontiveros has met his obligation under USSG §§ 2D1.1(b)(18), this Court is permitted to sentence him below the mandatory minimum.

**1.      This Court Should Grant a Reduction for Role Under USSG § 3B1.2**

Mr. Ontiveros requests that this Court grant him a reduction for his role in the offense, given all the facts and circumstances surrounding this case that clearly indicate that he played a minor role in the offense. Under USSG § 3B1.2(b), this Court is authorized to decrease the offense level in any given case if the defendant had a minor role. USSG § 3BB1.2. The defendant bears the burden of proving that he is entitled to a downward adjustment based on his role in the offense. *United States v. Diaz*, 884 F.3d 911, 914 (9th Cir. 2019). Courts have long held that in determining whether to grant a minor-role reduction, the correct inquiry is whether the defendant was "substantially less culpable than the average participant" in the charged criminal activity. Id. (quoting USSG 3B1.2 cmt. N.3(a)).

Amendment 794 also enumerates a list of factors for courts to consider when deciding whether to grant a minor role adjustment: In determining whether to apply subsection (a) or (b), or an intermediate adjustment, the court should consider the following non-exhaustive list of factors: (i) the degree to which the defendant understood the scope and structure of the criminal activity; (ii) the degree to which the defendant participated in planning or organizing the criminal activity; (iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority; (iv) the nature and extent of the defendant's participation in the

commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts; (v) the degree to which the defendant stood to benefit from the criminal activity.

In this case, all five (5) factors are present. First, Mr. Ontiveros is not the type of person who is intimately involved in drug trafficking, and, by all accounts, the record shows that he has held legitimate jobs his entire life. He is a fisherman by trade and has no criminal record. He was recruited to participate in this smuggling event. He certainly did not understand the larger operation that he decided to become a part of when he agreed to engage in this conduct.

Second, Mr. Ontiveros did not plan or organize the criminal activity in question but was simply following orders on being told what do. Mr. Ontiveros agreed to fly to Colombia to photograph a shipment of cocaine. He did not agree to actually smuggle the drugs out of the country. He was first contacted to take a picture of the merchandise and his knowledge was limited to the facts that he was being paid to send pictures of the merchandise. He did not know any of his co-defendants (and his co-defendants did not know him). This indicates that the organizers of this event knew that by cobbling together a group of unsophisticated men to drive a boat to Mexico, they would likely be more successful.

Third, Mr. Ontiveros was not able to exercise decision-making authority in this criminal scheme but was only following orders. He did not give orders, but rather, received them. It would be inconceivable for Mr. Ontiveros to "back out" of the conspiracy when he found himself in a foreign country, with no way of getting back to his hometown. Far from being coerced into this conduct, his role was somewhat mitigated by what he actually knew. Further, there were no people "below" him, as he was at the low end of the hierarchical pyramid. These facts militate toward a grant of minor role.

Fourth, Mr. Ontiveros' orders were very simply, take pictures of the merchandise, but not to drive or to assist in driving a boat to Mexico.

- 6 -
DEFENDANT'S SENTENCING MEMORANDUM

Finally, this was the first and only time that Mr. Ontiveros knowingly agreed to get involved with drug smuggling. As far as he was concerned, his role was limited and participation in guiding the vessel was minor. He did not have an ownership interest in the drugs. Stated simply, Mr. Ontiveros is in a different position than that of an organizer or recruiter.

Mr. Ontiveros is not regularly involved in drug trafficking and is extremely remorseful for his conduct. Given the above facts, a two-level reduction for minor role is appropriate in this case.

Should this Court grant a role reduction, this would put Mr. Ontiveros at a Base Offense Level of 29 with a guideline range of 87-108 months.

**3.  This Court Should Grant a Variance Under USSG § 3553(a)(2)**

This Court has the authority to consider all the facts and circumstances of both the offense in question and of the defendant's background in order to craft a sentence that is appropriate for this defendant. USSG §§ 3553(a)(1)-(2). Mr. Ontiveros is a young father of two small children. He has not seen his children for almost two years. He grew up in a fishing village and is far from being a sophisticated smuggler. He is a fisherman who got in way over his head and is now paying the price for it. While it is important for this Court to send a message that such behavior will not be tolerated (and strongly condemned and punished), varying from the guidelines in this case to fashion a sentence that is sufficient, but not greater than necessary, would serve the sentencing goals in a global sense. A sentence of 48 months would be appropriate in this case and would send a significant message to Mr. Ontiveros that this type of conduct is unacceptable and intolerable in society. This sentence would punish him, but it would also send a message that this type of behavior, while financially appealing at first, will eventually lead to time behind bars. Mr. Ontiveros respectfully requests this Court grant a variance for the above reasons.

/ / /

/ / /

/ / /

# IV.
# CONCLUSION

Based on the foregoing, Mr. Ontiveros respectfully requests this Court impose a variant sentence of 48 months and a three-year period of supervised release.

DATED: February 16, 2023        BERNAL LAW, APLC

/ s / *Pedro Bernal Bilse*
_____
Pedro Bernal Bilse, Esq.
Attorney for ALVARO I. ONTIVEROS VALDEZ

# CERTIFICATE OF SERVICE

Counsel for the Defendant certifies that the foregoing Sentencing Memorandum has been electronically served on the following parties by virtue of their registration with the CM/ECF system:

ALLISON LAIR MURRAY - ASSISTANT UNITED STATES ATTORNEY

NATALIE NELSON – SENIOR UNITED STATES PROBATION OFFICER

Respectfully submitted,

DATED: February 16, 2023  / s / *Pedro Bernal Bilse*

_____
Pedro Bernal Bilse
Attorney for ALVARO ISRAEL ONTIVEROS VALDEZ